This is an appeal by seventeen-year-old Vincent Lamar Williams from an order of the Juvenile Court of Mobile County ordering his transfer to circuit court for criminal prosecution as an adult. Williams argues that the State's transfer motion should not have been granted because there was reasonable ground to believe that he was committable to an institution for the mentally retarded where he would benefit from treatment.
In his written order of transfer, the trial judge made specific findings on each of the six factors required to be considered by Alabama Code 1975, § 12-15-34 (d):
 "1. Probable cause exists that the offenses of Assault, 1st, and Attempted Murder were committed, and that said child committed said offenses.
 "2. The said child was fourteen (14) or more years of age at the time of the conduct charged, and is alleged to have committed acts which would constitute felonies if committed by an adult.
 "3. The Court finds no grounds to believe that said child is committable to an *Page 888 
institution or agency for the mentally retarded or mentally ill.
 "4. Said child is physically mature and has sufficient mental maturity for a person of his age.
 "5. Said child has a prior delinquency record, as follows:
 "03/28/84 — Sexual Abuse; six months formal probation.
 "06/05/84 — Violation of Probation for school suspension after bringing a marijuana cigarette to school and smoking it; one week flat sentence in detention at the Strickland Youth Center.
 "6. Treatment efforts for the said Vincent Lamar Williams have included formal probation, and a one week flat sentence in detention at the Strickland Youth Center.
 "7. The resources presently available to the Juvenile Court have been shown not to be successful in dealing with the delinquent behavior of said child, and do not appear appropriate for dealing with the delinquent behavior of said child.
 "8. It is in the best interests of the child and the community that the motion of the Assistant District Attorney to transfer said case for criminal prosecution as an adult, be granted."
It is undisputed that Williams either cut Jesse Jackson's throat with a knife or, at the very least, held him while another youth cut him. There is no question that this conduct would constitute a felony if committed by an adult.
The court found "no grounds to believe" that Williams "is committable to an institution or agency for the mentally retarded or mentally ill." At the hearing on the motion to transfer, probation officer Sandra McLaughlin testified that Williams "should be kept in the Juvenile System, and committed to the Department of Youth Services," although this was "probably not" in the community's best interest. Her written report concluded:
 "Although it may be in the overall best interest of this community to transfer Vincent Williams to the adult court system, it is this probation officer's recommendation that he remain in the Juvenile Court System as he has not received its maximum benefit, and due to his approximate mental age of seven years."
Prior to the transfer hearing, Williams was given a psychological evaluation. Larry Faison, a psychological examiner for the Youth Center, testified that Williams "could benefit from treatment in a mentally retarded type of facility, if one were available," when asked by the trial judge, "[D]o you believe there are no reasonable grounds to believe he is committable to an institution or agency for the mentally retarded or mentally ill at this time."
Faison also testified:
 "I think his I.Q. scores would certainly qualify him for some types of treatment. Whether or not that treatment would be available in the State of Alabama, I think, would be very questionable, that he would qualify for any program that they have going at the present time."
* * * * * *
 "I would — I don't know anything about the facts of the case, but just based upon the test data that I have here, I think he would certainly qualify for some type of treatment, but there is no treatment available in the State of Alabama for functional individuals who have extremely low intelligence. They are not generally committed to institutions as long as they are functional."
* * * * * *
 "I think he would benefit from vocational training. That he does need, in order to take care of himself in the future. How much he would absorb from other types of counseling and more sophisticated type of treatment, I think we would be very limited. That would be about as far as I could project on that.
"BY MR. BYRD:
 "Q. Would he get more from the counseling? Now, withdraw that.
"A. Probably not."
* * * * * * *Page 889 
 "THE COURT: My question is, do you believe there are no reasonable grounds to believe he is committable to an institution or agency for the mentally retarded or mentally ill at this time?
 "A. I think he would benefit from treatment in a mentally retarded type of facility, if one were available.
"THE COURT: If one were available. I see.
"A. That's the conditional —
"THE COURT: Thank you.
 "A. That's the reason I did not include that in the report."
The trial judge found that Williams "has sufficient mental maturity for his age." Faison's psychological report showed that, in November of 1985, Williams had "a chronological age of 17 years and 3 months. His mental age is 7 years, 8 months which yields an I.Q. of 48." Faison testified that the psychological tests revealed "possible" evidence of widespread brain damage, but that "[H]e has enough street wise intelligence that I think he's reasonably functional in order to maintain himself, but the more sophisticated the situation, the poorer his performance would be." * * * "I would describe him as of childish immaturity."
At the conclusion of the transfer hearing, the trial judge expressed his concern:
 "[I]t's the Court's opinion that there is probable cause to believe that Vincent Lamar Williams either cut or helped someone cut the throat of this victim over here, and I think it's just a miracle that this man over there is not dead from it. I'm very concerned with that, and I appreciate the fact that this young man could receive more treatment out here, but I am worried to death about his responsibility to other citizens of this community, and this is a very close case, because of his mental age, and the other psychological factors, and I don't know that our system really knows what to do with someone like this, but based on the evidence heard here today, I find that there is cause to believe that he should be transferred to the Circuit Court to be tried as an adult on these charges, and it's so ordered."
Alabama Code 1975, § 12-15-34, provides in pertinent part:
 "(b) The court shall conduct a hearing on all such motions [requesting the court to transfer the child for criminal prosecution] for the purpose of determining whether it is in the best interest of the child or the public to grant the motion. If the court so finds and there are no reasonable grounds to believe he is committable to an institution or agency for the mentally retarded or mentally ill, it shall order the case transferred for criminal prosecution.
 "(c) When there are grounds to believe that the child is committable to an institution or agency for the mentally retarded or mentally ill, the court shall proceed as provided in section 12-15-70.
 "(d) Evidence of the following and other relevant factors shall be considered in determining whether the motion shall be granted:
"(1) The nature of the present alleged offense;
 "(2) The extent and nature of the child's prior delinquency record;
 "(3) The nature of past treatment efforts and the nature of the child's response to such efforts;
"(4) Demeanor;
 "(5) The extent and nature of the child's physical and mental maturity; and
 "(6) The interests of the community and of the child requiring that the child be placed under legal restraint or discipline."
In determining the existence or non-existence of "reasonable grounds to believe" that the child is committable to an institution or agency for the mentally retarded or mentally ill under §§ 12-15-34 (b) and (c), the court must consider the six relevant factors listed in § 12-15-34 (d). Mayne v. State,416 So.2d 741, 742 (Ala. 1982); Bragg v. State, 416 So.2d 715, 717
(Ala. 1982). Reasonable cause to believe is *Page 890 
not an independent determination but is a decision made after a consideration of the totality of the circumstances similar to determining probable cause for a search. Illinois v. Gates,462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
In construing a statute, a court "must look at the entire statutory scheme instead of isolated phrases or clauses."Alabama Farm Bureau Mutual Cas. Ins. Co., Inc. v. City ofHartselle, 460 So.2d 1219, 1225 (Ala. 1984). "A statute must be considered as a whole and every word in it made effective if possible." Alabama State Board of Health ex rel. Baxley v.Chambers County, 335 So.2d 653, 654-55 (Ala. 1976). "Statutes are to be construed as a whole and the parts thereof harmonized if possible." Eagerton v. Terra Resources, Inc., 426 So.2d 807,808 (Ala. 1982).
A trial court's ruling on whether or not to transfer a child to circuit court for prosecution as an adult should not be reversed unless clearly erroneous where there is evidence to support the order. Bragg, 416 So.2d at 716-17. The question is not whether or not this Court would have reached the same decision regarding transfer as did the trial judge.
 "The decision to transfer a juvenile for prosecution as an adult is a judicial one, Reeves v. State, 419 So.2d 217, 218 (Ala. 1982), involving a mandatory consideration of each of the factors enumerated in Section 12-15-34 (d). Gulledge v. State, 419 So.2d 219 (Ala. 1982); Mayne v. State, 416 So.2d 741 (Ala. 1982); Bragg v. State, 416 So.2d 715 (Ala. 1982); McKinney v. State, 404 So.2d 639 (Ala. 1981). While `legislation compels consideration of each of the six factors', Reeves, 419 So.2d at 218, the weight to be given each of those factors in balancing the interests of the juvenile and society must be left to the sound discretion of the juvenile court judge. Even though some of the factors may indicate that it would be in the best interest of the child and the public to treat the youth as a juvenile, the judge may still order treatment as an adult after weighing all the factors and circumstances involved."
* * * * * *
 "In reviewing an order transferring a juvenile to the circuit court for criminal prosecution as an adult, this Court is limited to considering whether the juvenile court abused its discretion considering the totality of the circumstances involved. `In reviewing the record, this court has held that it will not interfere with a lower court's order transferring a juvenile to circuit court unless that order is clearly erroneous.' Mayne v. State, 416 So.2d 741, 742 (Ala. 1982). `The question involved on such review is not whether the reviewing court would reach a different conclusion, but whether the decision reviewed has a rational basis and is not arbitrary or capricious.' 43 C.J.S. Infants Section 49 (b). Neither this Court nor our Supreme Court will interfere with the transfer order of the juvenile court unless it is `clearly erroneous.' Williams v. State, 361 So.2d 1157 (Ala. 1978)." Whisenant v. State, 466 So.2d 995, 998
(Ala.Cr.App. 1984), reversed on other grounds, Ex Parte Whisenant, 466 So.2d 1006 (Ala. 1985).
Our review convinces us that the trial judge made a careful and conscientious determination that Williams should be treated as an adult. While this is a "very close case," as the trial judge recognized, the record supports no finding of the abuse of judicial discretion. The trial judge can assign appropriate weight to the six factors listed in § 12-15-34 (d) as well as other relevant circumstances. The statute does not require that specific weights be assigned to different factors and circumstances. Consequently, the trial judge is free to consider each case individually and balance the particular circumstances involved. Cf. Ex parte Clisby, 456 So.2d 105, 108
(Ala. 1984), cert. denied, 470 U.S. 1009, 105 S.Ct. 1372,84 L.Ed.2d 391 (1985) (weighing aggravating and mitigating circumstances in death case). *Page 891 
The judgment of the Juvenile Court of Mobile County is affirmed.
AFFIRMED.
All Judges concur.