MONTIEL, Judge.
The appellant, R.J., a juvenile, appeals from an order transferring him to the Jefferson Circuit Court grand jury, Bessemer Division, for trial as an adult. He was charged with aiding and abetting in a capital murder. See § 13A-5-40(a)(2), Code of Alabama 1975.
The facts adduced at the hearing on the motion to transfer tend to show the following. On March 15,1992, five juveniles allegedly robbed Bill’s Farmhouse Restaurant in Hueytown, Alabama. One of the juveniles shot Mr. William Wesson in the back with a pistol. Mr. Wesson died as a result of his injuries. Shotgun shells were also found at the scene of the murder.
An informant told the police that one of the juveniles involved in the robbery and shooting attended Ensley High School. The police went to the high school and questioned A.M., who later became a codefendant. As a result of the questioning of A.M., the police also arrested D.H. and N.W. at the school. Based upon the statements of these code-fendants, the appellant was also arrested, without a warrant, at his residence.
After his Miranda rights were explained to the appellant, he made a statement to the police. The appellant stated that on March 15, 1992, he and the codefendants rode in a friend’s vehicle to Dolomite and that they kept riding back and forth behind a restau *1165 rant. Three codefendants got out of the car and entered the restaurant through the back door when an employee opened the back door to take out the garbage. The appellant stated that until this time he did not realize that the codefendants intended to rob the restaurant. The appellant stated that after the codefendants entered the restaurant he heard a “boom.” The appellant further stated that the codefendants came out of the restaurant and that he saw one of them was carrying a 12-gauge shotgun. The appellant and the codefendants then drove from the scene.
I
The appellant first argues that his war-rantless arrest was improper because, he says, the police lacked probable cause to believe he had committed a crime and because, he says, his arrest constituted an illegal “seizure.”
A
The appellant argues that the police did not have probable cause to arrest him, because, he says, the police were acting only on a tip from a confidential informant whose veracity had not been established and on the information from the codefendants. We hold that the information supplied by these sources provided the police with probable cause to believe the appellant had been involved in the crime.
The State argues that the informant did not provide any information leading to the appellant’s arrest. Rather, the State alleges, informant only named A.M., the first codefendant questioned about the crime, who then named the appellant as a participant. In Ball v. State, 409 So.2d 868, 874 (Ala.Crim.App.1979), writ quashed, 409 So.2d 876 (Ala.1980), we held that when an officer receives information from a reliable source that an accused was a participant in a crime, probable cause may exist to arrest the accused. In this case, the officers had information from A.M., who had knowledge of and assertedly participated in the crime, that the appellant was also a participant.
At the time of the appellant’s arrest, the police had the following information: The restaurant had been robbed; Mr. Wesson had been shot and killed; witnesses said that several black males were involved; an informant stated that A.M. was a participant in the crime; and A.M., when questioned by the police, indicated his knowledge of the crime, and, therefore, his reliability, and named the appellant as a participant. This information was sufficient to provide probable cause to believe that the appellant had, in fact, participated in the crime.
B
The appellant argues that his arrest at his residence constituted an illegal “seizure” and that, therefore, the case against him should have been dismissed. Specifically, the appellant argues that the officers came his house without informing him why they were there and that they indicated that they merely wanted to talk to him when the officers, in fact, intended to arrest him. This argument is without merit.
Firsts when the officers arrived at the appellant’s house, they had reliable information from A.M. that the appellant had been involved in the crime. Therefore, the officers had probable cause to arrest the appellant at that time. Second, one officer testified that upon entering the house, he saw the appellant, that he then told the appellant that he was charged with robbery and murder, that he read the appellant his Miranda rights, and that he handcuffed the appellant.
Thus, conflicting evidence was presented regarding the appellant’s arrest of the appellant, which the appellant contends was an unlawful “seizure.” The conflicting evidence as to whether there was a “seizure’? presents a credibility determination to be decided by the trial court which will not be disturbed unless the trial court abused its discretion. See Atwell v. State, 594 So.2d 202, 212 (Ala.Crim.App.1991), cert. denied, Inabinette v. State, 594 So.2d 214 (Ala.1991). The record does not indicate that the trial court abused its discretion in denying the appellant’s motion to dismiss and, therefore, a reversal is not warranted.
*1166 II
The appellant argues that the trial court should have granted his motion to suppress the statement that the appellant gave to police officers because, he says, his arrest was illegal. This argument is without merit. We concluded in part I of this opinion that the appellant’s arrest was lawful. Therefore, the trial court did not err in failing to suppress the appellant’s statement on the basis that it was the result of an illegal arrest.
III
The appellant further argues that the trial court erred in not suppressing his statement because, he says, he did not voluntarily, knowingly, and intelligently waive his Fifth Amendment right against self-incrimination. Specifically, the appellant argues that he was coerced into giving his statement because, he says, the police did not allow him to consult with his parents and because, he says, the officers played portions of the recorded statements of his codefendants for the appellant before the appellant made his statement.
According to the testimony of the police officers, the appellant was read his Miranda rights when he was arrested at his house and on two other occasions prior to giving his recorded statement. After advising the appellant of his rights at his house, a police officer questioned the appellant as to whether he understood those rights. The officer testified that the appellant responded that he understood his rights. The appellant’s mother was present at that time. The testimony at the transfer hearing indicates that the appellant was again read his Miranda rights after he was placed in the police vehicle. At the police station, the appellant was also read his Miranda rights, and he signed a form waiving those rights after an officer read the waiver to the appellant and after the appellant, himself, read the waiver form. His parents were not at the police station when the appellant arrived, but they came to the station later. The officer who was with the appellant when he made his statement testified that at no time did the appellant request that he have his parents present while giving his statement.
No promises were made or coercion applied to the appellant to obtain his statement. The appellant stated, as noted in the transcript of his recorded statement, that he gave the statement on his own free will and that he was not threatened or coerced into giving the statement.
A two-part analysis is used to determine the admissibility of a statement given by the accused while he is in custody: the court must first determine whether proper Miranda warnings were given, and then must determine if the statement was voluntary. Siebert v. State, 555 So.2d 772, aff'd, Ex parte Siebert, 555 So.2d 780, cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1989). Whether the appellant waived his Miranda rights and whether the waiver was knowing and voluntary must be decided from the totality of the circumstances in a given case. Rogers v. State, 417 So.2d 241, 248 (Ala.Crim.App.1982) (citations omitted).
Here, police officers testified as to the specific rights read to the appellant, and those rights complied with the juvenile Miranda rights. The appellant was read his Miranda rights on three occasions. Each time, according to the State’s evidence, the appellant indicated that he understood his rights. The appellant signed a waiver of rights form after having the form read to him and after reading it himself. Rule 11(A)(4), A.R.Juv.P., “does not require that a parent be present during the questioning of a juvenile.” Flowers v. State, 586 So.2d 978, 983 (Ala.Crim.App.1991), cert. denied, 596 So.2d 954 (Ala.1991), cert. denied, Alabama v. Flowers, — U.S.-, 112 S.Ct. 1995, 118 L.Ed.2d 591 (1992). According to the testimony adduced by the State at the transfer hearing, the appellant never requested to consult with either of his parents. After reviewing the totality of the circumstances, we conclude that the appellant knowingly waived his rights.
We next look to the voluntariness of the appellant’s statement. The determination whether a statement was voluntary and therefore admissible is left to the trial court’s discretion and its decision will not be disturbed on appeal unless it is palpably con *1167 trary to the great weight of the evidence. Uber v. State, 596 So.2d 608, 612 (Ala.Crim.App.1991); Stariks v. State, 572 So.2d 1301, 1304 (Ala.Crim.App.1990). The State correctly argues that confronting the accused with a codefendant’s confession implicating the accused is not necessarily unfair or coercive. Sandifer v. State, 517 So.2d 646, 648 (Ala.Crim.App.1987). Here, confronting the appellant with a portion of the codefendant’s recorded statement was not coercive because the appellant cannot establish that the confrontation caused him to confess falsely. Barrow v. State, 494 So.2d 834, 839 (Ala.Crim.App.1986); see also, Sandifer, 517 So.2d at 648.
Thus, we hold that the trial court did not err in failing to suppress the appellant’s statement on the ground that the appellant did not knowingly and intelligently waive his Miranda rights.
IV
The appellant further argues that the trial court erred in failing to require the State to disclose the identity of the confidential informant who provided the information that the codefendant, A.M. was involved in the crime. This precise issue was addressed in D.R.H. v. State, 615 So.2d 1327 (Ala.Crim.App.1993). D.R.H. is a eodefendant in this case. In D.R.H., this Court recognized that the police used the confidential informant to obtain a lead in the ease, but no information was provided by the informant linking D.R.H. to the crime. Here, as well, the information from the informant did not link the appellant to the crime. No statements of the informant were received into evidence at the hearing. This Court stated in D.R.H.:
“‘The right to confront a witness arises only when that witness inculpates a defendant.’ United States v. Daly, 756 F.2d 1076, 1081 (5th Cir.1985), cert. denied, 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 558 (1985), citing Chambers v. Mississippi, 410 U.S. 284, 297-98, 93 S.Ct. 1038, 1047, 35 L.Ed.2d 297, 310 (1973). The appellant had the opportunity to confront all witnesses who provided evidence at his transfer hearing. Neither the confidential informant nor the suspect who ultimately led the police to the appellant testified at the hearing nor were any statements made by them received into evidence; thus, the appellant had no right to confront or to cross-examine either of these two individuals.”
615 So.2d at 1329-1330.
The conclusion of this Court in D.R.H. is equally applicable in this case. Therefore, the identity of the informant was not due to be disclosed.
V
The appellant next argues that it was error for the trial court, during the hearing, to consider the statements given by the code-fendants before ordering that the appellant be transferred to the Circuit Court for trial as an adult. Specifically, the appellant argues that the record shows that the trial court intended to review the statements of the codefendant’s before making its decision in the appellant’s case. At the conclusion of the appellant’s hearing, the trial judge said:
“What I’m going to do in this case is I’m going to take this case under advisement. I want to review some of the evidence, some of the reports.... ”
“I would like some more time to go over the evidence and some more of the statements before I make a decision on this ease....”
In D.D.P. v. State, 595 So.2d 528, 535 (Ala.1991), the Alabama Supreme Court, following Lee v. Illinois, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), held that a codefendant’s statement is not admissible against another codefendant over a hearsay objection unless the codefendant whose statement is being offered is unavailable for trial. Unless the codefendant actually invokes the privilege against self-incrimination, he is not unavailable. Id.
This Court does not view the trial court’s remarks in this case as indicating that the trial court considered the statements of the codefendants in deciding to transfer the appellant. There were several reports and statements that the trial court could have been referring to, including the appellant’s statement and the reports of a psychologist *1168 and a probation officer. It very well could have been these reports and statements, and not the eodefendants’ statements, to which the trial judge referred in his remarks.
None of the codefendants’ statements were admitted into evidence at the appellant’s transfer hearing. Although the appellant asserts that the remarks by the trial court meant that the trial court intended to review the codefendants’ statements in conjunction with his case, there was no evidence presented at the hearing to indicate that the trial court considered the codefend-ant’s statements. A trial court is presumed to disregard inadmissible evidence in reaching its decision, D.D.P., 595 So.2d at 533, and based upon the record, we find no evidence sufficient to rebut this presumption. See also, Whisenhant v. State, 555 So.2d 219, 229 (Ala.Crim.App.1988), aff'd, Ex parte Whisenhant, 555 So.2d 235 (Ala.1989), cert. denied, 496 U.S. 943, 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990).
VI
The appellant next contends that the State presented insufficient evidence at the hearing to establish probable cause that the appellant committed the crimes with which he was charged, and that, therefore, he should not be transferred to be tried as an adult. The appellant specifically argues that his statement, without more, is insufficient to establish probable cause. D.D.P., 595 So.2d at 535. While this is a correct statement of the law, the appellant’s argument is without factual support.
We have held that when a juvenile’s statement is corroborated by the physical details of the crime itself, such that only the perpetrator of the crime would know of the details, probable cause may be based upon the totality of the circumstances. W.T.K v. State, 598 So.2d 33 (Ala.Crim.App.1992); C.C. v. State, 586 So.2d 1018, 1021 (Ala.Crim.App.1991).
The record reflects that there was sufficient evidence from which the trial court could find probable cause. The appellant, in his statement, acknowledged his presence during the commission of the crime. According to the appellant, the juveniles drove past the restaurant until the back door of the restaurant was opened. At that point, three of the juveniles went inside to rob the restaurant. The appellant, according to his statement, sat in the vehicle and waited for the codefendants to return. A witness for the State testified that he saw a person in the passenger’s seat of the vehicle as it sat behind the restaurant and testified that that person had a gun. There was evidence that conversations took place in the vehicle while the appellant was present to the effect that the juveniles had to “work together” and that they did not want to “mess things up.” The appellant, in his statement, said that three codefendants entered the restaurant, that he heard a “boom,” and that he saw one of the codefendants carrying a shotgun when they came out of the restaurant. While the appellant claims that he took no part in the crime other than being present in the vehicle outside the restaurant, and that he did not know the codefendants were going to rob the restaurant, the appellant did not report the crime to the authorities, but instead concealed his participation in the crime with the codefendants afterwards.
In this case, the appellant’s statement is corroborated by physical details of the crime itself. The State presented testimony that three individuals entered the restaurant through the back door when the back door was opened. At least one individual waited in the car and appeared to have a gun. State’s witnesses also testified that one of the individuals who went into the restaurant had a shotgun. Mr. Wesson was shot while the three individuals were in the restaurant. The appellant stated that he saw a shotgun. In addition to the expended shell easing from the bullet that killed Mr. Wesson, some shotgun shells were found at the scene of the crime. Thus, the appellant’s statement is corroborated by the details of the crime. We will reverse the trial court’s decision to transfer the child as an adult only if that decision is clearly erroneous. C.C., 586 So.2d at 1021; Minor v. State, 502 So.2d 778 (Ala.Crim.App.1986). Here, the trial court correctly considered the appellant’s statement in finding probable cause.
*1169 VII
Last, the appellant argues that the trial court erred in transferring him to be tried as an adult, because, he says, he has no criminal record and, thus, no past experience within the juvenile system. The appellant contends that there was no evidence that it is in his best interests or the best interests of the public that he be transferred.
The trial court’s order transferring the appellant to be tried as an adult listed the six factors to be considered under § 12-15-34(d), Code of Alabama 1975. While some of the factors weigh in favor of keeping the appellant in the juvenile system, some do not. The statute requires the trial judge to consider each of the factors, but does not mandate the weight to be accorded each factor. The trial judge is to assign the appropriate weight to the factors. N.D.T. v. State, 592 So.2d 647 (Ala.Crim.App.1991). We will not reverse the trial court’s decision unless, in making its decision the trial court abused its discretion. R.L.V. v. State, 580 So.2d 91 (Ala.Crim.App.1991).
In this case, although the appellant has no prior criminal record, the evidence tended to show that the appellant was both physically and mentally mature. In addition, the appellant was almost an adult at the time the alleged crime was committed. Additionally, the alleged offense involved the shooting of an individual during a robbery — a capital offense. Some evidence indicated that the appellant possessed a gun during the crime and was a participant in planning the commission of the crime.
We hold that clear and convincing evidence supports the trial court’s determination that it is in the best interests of the appellant and the public to transfer the appellant for criminal prosecution.
The judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.
BOWEN, P.J., concurs in result only.